No. 81-271

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

_____

HILMER D. WEYLER,

        Plaintiff and Respondent,

    -vs-

ROY KAUFMAN, RALPH KAUFMAN,
GEORGE KAUFMAN, et al.,

        Defendants and Appellants.

_____

Appeal from:  District Court of the Fourteenth Judicial District,
In and for the County of Golden Valley, The Honor-
able Nat Allen, Judge presiding.

Counsel of Record:

    For Appellants:

            Pedersen, Herndon, Harper, Munro & Hartman,
            Billings, Montana
            Herman & Mohr, Laurel, Montana

    For Respondent:

            Ask & Pratt, Roundup, Montana

_____

Submitted on Briefs:  November 25, 1981

Decided:    DEC 3 0 1981

Filed: DEC 3 0 1981

_____
                  Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Hilmer Weyler initiated this action in the District Court, Golden Valley County, to recover the balance due and damages arising out of a farming contract. Judgment was entered for Weyler against the Kaufman brothers in the amount of $6,307.30, plus costs and attorney fees. The Kaufmans appeal.

The Kaufmans own one farm in Golden Valley County near Lavina, Montana, and another farm near Laurel, Montana. During the summer of 1978, the Kaufmans required assistance in converting grazing land to seeded farm ground on the Golden Valley place. Weyler, an independent contract farmer, was hired for the discing jobs at the rate of $51.27 per hour. The discing was completed in June and in August, and Weyler was promptly paid for his work.

On July 26 and 27, 1978, Weyler and the Kaufmans entered into an oral contract for the seeding of the Golden Valley farm. Weyler was to furnish his own drills, and to seed the farm at the rate of $4.00 per acre. The starting date was to be August 25, 1978, and the completion date September 20, 1978. Weyler testified he advised the Kaufmans that he would need an advance payment in order to meet the $9,000 down payment on the drills he was purchasing. Weyler testified that in August when he approached the Kaufmans for the advance and they refused, he told them he would have to finish another job in order to get the money for the drills. As a result of this and other delays, the seeding was started on September 10 and completed on October 6. Weyler seeded 4690 acres at $4.00 per acre and for a total contract price of $18,760. The Kaufmans made payments totaling $14,000, but refused to pay the balance claiming they were not satisfied with the work.

Prior to seeding, Weyler spot-disced one of the fields which had areas of heavy sage brush. He billed the Kaufmans for this work at $627.30, but they refused to pay because they main-

tained the spot discing was included in the seeding contract.

Weyler demanded payment on the seeding contract several times, then filed a lien against the Golden Valley property and commenced this action. The Kaufmans alleged that Weyler improperly performed the seeding and caused a poor crop yield, and counter-claimed for damages of $85,000 due to crop loss and for damages of $600,000 due to the filing of the lien.

Following trial, the District Court entered its findings, conclusions and judgment, awarding Weyler damages for the balance due on the seeding contract in the amount of $4,760 plus interest, for the spot discing in the amount of $627.30, for consequential damages of $920 due to the inability of the plaintiff to perform winter maintenance on his equipment, and for costs and attorney fees. The court further found that the Kaufmans sustained no damages as a result of the plaintiff's farming and that the Kaufmans failed to present evidence on their claim for damages due to the filing of the lien.

The issue on review is whether the evidence was sufficient to support the findings and conclusions of the District Court with regard to the performance of the contract, the damages and the counterclaim.

The general rule is that the findings and conclusions will not be set aside if supported by substantial evidence and by the law. Evidence will be viewed in the light most favorable to the prevailing party and the judgment of the trial court will be presumed correct unless it is clearly erroneous. Rule 52(a), M.R.Civ.P.; Toeckes v. Baker (1980), ____Mont.____, 611 P.2d 609, 37 St.Rep. 948.

The Kaufmans contend that the evidence was not sufficient to support the finding that Weyler fully performed the seeding contract and was entitled to full payment. Specifically they argue that Weyler failed to perform by September 20, the agreed completion date, and further that his failure to timely perform

- 3 -

caused them extensive loss due to poor crop yield. In addition the Kaufmans claimed Weyler's performance was unsatisfactory.

Prior to entering into the contract, the parties discussed the details of the job including the equipment to be used, the depth of the seed placement, the starting date of August 25, the completion date of September 20, and the rate. By telephone on July 27, 1978, George Kaufman told Weyler to go ahead with the job. Weyler testified:

> " . . . And I said fine, and I was really happy about it. I just said the only condition that I was--the only condition I said was in order to meet the time frame we talked about it was going to be imperative that I get some help on the $9,000.00 down payment on the drills. And George said well I think we can work something out on that."

George Kaufman denied that Weyler told him he needed an advance in order to acquire the drills, although he admits knowing that Weyler did not have his own drills.

It is not the function of this Court to resolve conflicts in the evidence. The District Court has the advantage of observing the demeanor and credibility of the witnesses. The trial court has resolved this conflict in favor of Weyler and this finding is supported by substantial evidence. Weyler accepted the Kaufmans' offer on the condition that he get some assistance from them on the down payment. George Kaufman manifested his assent to that condition. The oral contract thus contained a condition precedent; i.e. a condition which had to be performed before Weyler was absolutely bound to the specified time frame. Section 28-1-403, MCA. When the condition was not performed by the Kaufmans, Weyler was relieved of his obligation to meet the specified dates of performance. Roy Kaufman admitted that they gave Weyler an extension on the starting date. Once Weyler was no longer bound to the specified dates, the contract was to be performed within a reasonable time. Section 28-3-601, MCA.

The Kaufmans on appeal disagree with the finding of the District Court that the balance due on the contract was $18,760. Yet both George Kaufman and Roy Kaufman testified that Weyler had seeded 4690 acres at $4.00 per acre. An initial estimate of 4500 acres was agreed upon by the parties pending final measurement, but the official measurement was 4690 acres. Subtracting payments of $14,000 made on the contract from the total contract price of $18,760, the balance due was $4,760. The trial court properly entered judgment for this amount.

The bulk of the evidence at trial concerned the manner in which the seeding was performed and the yield of winter wheat harvested by the Kaufmans the following summer. The Kaufmans attempted to prove that Weyler performed unsatisfactorily and that their low yield was a direct result of his faulty performance. The trial court found that the farming was done in a workmanlike manner, that the lower yield was due to severe winter kill and a dry summer in 1979, that neighboring farms had similar low yields, and that the Kaufmans sustained no damage as a result of Weyler's performance. These findings are supported by the evidence. Ray Choriki, an agricultural consultant, meticulously examined the fields and found no evidence of shallow seeding or unevenly set drills. His detailed testimony indicated numerous causes for the poor spots, primarily the severe winter kill and dry summer of that year. Neighboring farmers testified they had similar low yields that year.

Finally, the Kaufmans contest the award of damages for the spot discing and the repair of the tractor. With regard to the spot discing, there was a conflict in the testimony of both parties. The Kaufmans maintained the spot discing was included in the seeding contract. Weyler testified that he had given the Kaufmans his rate sheet showing $51.27 per hour for discing. He bid the seeding at $4.50 per acre but settled for $4.00 per acre. He understood the discing would be under the same terms as the

previous discing jobs at the rate specified. The District Court resolved this conflict in Weyler's favor, and this Court will not substitute its judgment for that of the trial court.

However, we find that the award of $920 for the maintenance and towing of Weyler's tractor is not supported by the evidence. Weyler testified that he was aware of the problem with the ring and pinion of his tractor at the time he entered into the seeding contract with the Kaufmans. Prior to that time he had received payment for the first discing jobs. Damages are not recoverable unless they are proved to have been proximately caused or likely to result from the breach of contract. Section 27-1-311, MCA. The evidence does not establish that the tractor breakdown was proximately caused by the failure of the Kaufmans to pay the balance when due.

No evidence was presented by the Kaufmans on their counterclaim for damages resulting from the filing of the lien, therefore the District Court properly denied that relief.

Remanded with directions to reduce the judgment by $920, and as so modified the judgment is affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

- 6 -